UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| SCATPACK INC | CASE NO. 1:18-CV-01550 |
| VERSUS | JUDGE DRELL |
| GENUINE PARTS CO | MAGISTRATE JUDGE PEREZ-MONTES |

## RULING AND ORDER

Before the court is Scatpack, Inc's ("Scatpack") motion for partial summary judgment (Doc. 44). The parties have fully briefed the matter and oral argument was heard by the court on February 14, 2020. For the reasons set forth herein, the motion will be DENIED.

I. **Relevant Facts**

Scatpack is a family owned corporation that runs an auto parts business in Jena, Louisiana. In 2016, NAPA's[1] Jena, Louisiana store closed. Wanting to maintain a presence in the area, NAPA approached Scatpack about converting its store from a Car Quest franchise to a NAPA franchise. Scatpack agreed and on or about August 15, 2016, the conversion of the store from Car Quest to NAPA commenced and NAPA presented Scatpack with the "NAPA 'Change-Over' Agreement."

The "NAPA Change-Over Agreement provides in relevant part:

IN CONSIDERATION of the mutual promises and covenants contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by the parties, NAPA and Store Owners agree as follows:

Within a reasonable time after the execution of this Agreement by all parties, NAPA will change-over the Store(s) of the Store Owner by directing designated NAPA employees and certain manufacturer's representatives to physically inspect and count the existing automotive parts inventory located at the Store(s) on **August 15, 2016** ("the Change-over Date") unless rescheduled by mutual agreement of the parties. All inventory counts will be entered into a NAPA TAMS computer system

---

[1] NAPA is a national chain of auto part stores. In this case, Genuine Parts Co. owns the NAPA name.

for record-keeping purposes. Store Owner will ensure that its authorized representative(s) is present at all times during the inspection, inventory count and change-over procedures to observe and participate in order to confirm that the procedures are conducted accurately and in accordance with the terms of this Agreement. Upon completion of the inspection and inventory count, a listing an extension of the Store Owner's existing inventory at the agreed-upon pricing will be printed, and Store Owner's authorized representative will sign the inventory listing to confirm that the inspection and inventory counts were preformed in an accurate and correct manner.

(Doc. 44-8).

Scatpack agrees that NAPA came into its store and physically changed over the inventory, but it asserts that NAPA breached the above agreement by failing to provide a change-over inventory and accounting itemizing stock on hand. Scatpack argues that without this inventory, Scatpack was never able to accurately determine what inventory it had nor what money it was owed for products that were not kept on the shelf post-agreement. Despite sending four demand letters to various NAPA personnel from February 2, 2017 through July 18, 2017, no inventory and/or accounting was ever sent to Scatpack.

Scatpack contends it was severely and negatively impacted by this breach of contract because it did not receive the parts its clientele needed to operate, and those customers went elsewhere to obtain needed parts. Scatpack contends this breach was intentional on the part of NAPA and constitutes a bad faith failure to perform the contract; thus, Scatpack is entitled to damages for breach of contract.

## II. Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anders on v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir.2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The nonmoving party must establish the existence of a genuine issue of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir.1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312, citing Anderson v Liberty Lobby, 477 U.S. at 247.

### III. Analysis

Scatpack argues NAPA breached its "NAPA 'Change-Over' Agreement" when it failed to send the change-over inventory and accounting. In support, it cites the deposition testimony of Scatpack owners Raymond and Ethel Smith, and the demand letters its attorney sent to NAPA requesting the change-over inventory.

In response, NAPA argues that it did not materially breach any term of the contract. In support, it claims an unsigned change-over inventory was sent to Scatpack in both August 2016 and in October 2016 as was testified to by NAPA Warehouse Manager David McKinnon during his November 12, 2017 deposition.

A review of Mr. McKinnon's deposition reveals that Mr. McKinnon did in fact state that NAPA's General Manager Steve Winborne provided Scatpack a change-over inventory "at the end of August" and "early October." (Doc. 50-2, p. 16). When asked by Scatpack's counsel whether Mr. McKinnon saw those documents, he answered in the affirmative and asked if he needed to point them out, having produced them for the deposition. (Id.). Additional questioning of Mr. McKinnon further revealed that the August and September 2016 documents were reconciled in the days leading up to his November 12, 2019 deposition. (Id. at p. 19). When asked whether those documents were in fact ever given to the Smiths, Scatpack's owners, Mr. McKinnon stated, "not to my knowledge." (Id. at p. 22). In short, the deposition is quite muddy as to what inventory documents were given and when.

Mr. McKinnon's deposition testimony thus equally affirms both of the parties' positions. If taken with Scatpack's evidence, it appears in all likelihood that NAPA beached its contract with Scatpack. However, we must review all evidence in favor of NAPA as the non-moving party. In doing so we find, on this record, we cannot insert our judgment for that of the jury to grant partial summary judgment at this time. At the trial, we would expect the referenced confusing statements to be adequately supported or refuted.

**IV.   Conclusion**

For the reasons set forth above, it is hereby

**ORDERED** that Scatpack Inc.'s motion for partial summary judgment is DENIED.

**THUS DONE AND SIGNED** this 17th day of April 2020, at Alexandria, Louisiana.

                                                DEE D. DRELL, JUDGE
                                       UNITED STATES DISTRICT COURT